UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

————————————————————————X

In Re:                                                    Chapter 7
                                                          Case No. 1-12-43876-nhl
Youmin Guo


          Debtor.

————————————————————————X

Yuqing Wang *aka* Henry Wang                              Adv. Pro. No.: 1-12-01252-nhl


                    Plaintiff,

          -against-


Youmin Guo


                    Defendant.

————————————————————————X


**DECISION AFTER TRIAL**



APPEARANCES:

Jeffrey Benjamin, Esq.                    Richard Alan Chen, Esq.
Jeffrey Benjamin, P.C.                    Law Offices of Richard Alan Chen
118-21 Queens Blvd #501                   41-60 Main Street, # 203
Forest Hills, NY 11375                    Flushing, NY 11355

*Counsel for Yuqing Wang aka Henry Wang*   *Counsel for Youmin Guo*




**NANCY HERSHEY LORD**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is the objection by plaintiff Yuqing Wang a/k/a Henry Wang ("Henry" or the "Plaintiff") to the dischargeability of a debt, pursuant to 11 U.S.C. § 523(a)(2)(A).  Henry alleges that the defendant, debtor Youmin Guo ("Guo" or the "Debtor") stole merchandise, customers, and business opportunities from the Plaintiffs' wholesale vegetable markets.[1]  At Henry's behest, Guo entered into a settlement agreement, whereby Guo agreed to make payments to Henry in restitution of the amounts purportedly stolen and executed a confession of judgment in the amount of $1,000,000.  When Guo defaulted on the payments, Henry filed the confession of judgment in state court.  A few months later, Guo filed a petition for relief under chapter 7 of the Bankruptcy Code.  Henry commenced the instant adversary proceeding seeking to except the debt from Guo's discharge.  Because the Plaintiff failed to meet his burden of showing that the debt is for property obtained by false pretenses, false representation, or actual fraud, the Court finds that the debt is dischargeable under 11 U.S.C. § 727(a).

## I.    JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2). This decision constitutes the Court's findings of fact and conclusions of law to the extent required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

---

[1] As discussed *infra*, Henry was an owner or shareholder of Amersino Marketing Group LLC and Southeast Produce, Ltd.  The Defendant contends that Henry does not have standing to bring this action, because the alleged wrongdoing was purportedly committed against these separate legal entries, not against Henry in his individual capacity. Pl. Proposed Findings and Conclusions 13–14 § C, ECF No. 13.  For the purposes of this Decision on the merits, the Court presupposes, but does not decide, that Henry has a legal right to the claim asserted against Guo.

## II.    **BACKGROUND**

The facts of this case were developed at trial, through the testimony of three witnesses

called by the Plaintiff—Zhao Ying Wang *aka* Jackie Wang ("Jackie"), Henry, and the Debtor—

and certain exhibits admitted into evidence.  Guo did not call any witnesses; rather, the

Defendant rested at the conclusion of the Plaintiff's case.  Following trial, the parties submitted

proposed findings of fact and conclusions of law to the Court.[2]

Henry owned Amersino Marketing Group ("Amersino"), a vegetable wholesaler, and

oversaw its operations. Trial Tr. 31–33, March 11, 2014, ECF No. 34-1 (hereinafter "3/11/14

Tr.").  Early each morning, large quantities of produce arrived at the Amersino warehouse from

its suppliers, farms and production centers. *Id*. at 33–34.  Warehouse workers unloaded the

palates of vegetables. *Id*. at 34.  Meanwhile, salespeople contacted Amersino's customers;

restaurants, supermarkets, and down-market wholesale distributors; and took orders for the day's

merchandise. *Id.* at 32, 34.  Amersino generated sales invoices, and the warehouse workers

packed and loaded the produce onto trucks pursuant to those invoices. *Id.* at 34–38.  Next,

drivers delivered the orders to customers and returned the invoices to Amersino. *Id.* at 35.  At the

end of the day, Amersino's bookkeepers collected and processed the invoices. *Id.* at 36.

In approximately 2002 or 2003, Guo was hired as a driver at Amersino. 3/11/14 Tr. 41.

He subsequently worked in the Amersino warehouse, *id.* at 41, and around 2006, began handling

---

[2] In his post-trial submission, the Plaintiff proposed that the Court find the debt be excepted from discharge as a debt for money or property obtained by embezzlement, pursuant to 11 U.S.C. § 523(d)(4). Letter 5, ECF No. 52.  The Plaintiff did not plead a cause of action under § 523(d)(4) in the complaint; the single claim for relief was alleged under § 523(a)(2)(A).  Rule 15(b), made applicable by Bankruptcy Rule 7015, governs amendments to pleadings during and after trial. Fed. R. Civ. P. 15(b).  Even if the Court construed the reference to embezzlement in the post-trial submission as a proper 15(b) motion, the Plaintiff would not prevail under § 523(d)(4), because based on the findings of fact and conclusions of law set forth herein, the Plaintiff did not carry his burden as to fraudulent intent. *See Indo–Med Commodities, Inc. v. Wisell (In re Wisell),* 494 B.R. 23, 40 (Bankr. E.D.N.Y. 2011) (embezzlement requires a showing that: "(1) the debtor rightfully possessed another's property; (2) the debtor appropriated the property for use other than the use for which the property was entrusted; and (3) the circumstances implied a fraudulent intent.").

sales. Trial Tr. 45–46, April 7, 2014, ECF No. 38-1 (hereinafter "4/7/14 Tr."). Guo would call buyers from the customer list and take orders. 4/7/14 Tr. 45–46. Guo did not have the authority to dictate prices or print invoices, but he was permitted to correct mistakes on invoices and make adjustments for quality or quantity. 4/7/14 Tr. 56 –58; Trial Tr. 76–77, March 6, 2014, ECF No. 32 (hereinafter "3/6/14 Tr."); Trial Tr. 84–86, March 5, 2014, ECF No. 33 (hereinafter "3/5/14 Tr.").

Henry's nephew, Jackie, also worked in sales at Amersino. 3/11/14 Tr. 38. Additionally, Jackie helped to manage the business. His uncle delegated tasks to him such as negotiating or changing prices, issuing credits for returned product, and reviewing invoices. *Id.* at 38–41, 50; 3/5/14 Tr. 81–82.

While he was employed at Amersino, Jackie formulated an idea for his own business, Eastern Star Trading ("Eastern Star"), 3/6/14 Tr. 75–76, and asked Guo to join him in the new enterprise. 4/7/14 Tr. 46. Eastern Star bought vegetables from Amersino and other wholesale suppliers, and resold the merchandise to customers, such as supermarkets. 4/7/14 Tr. 31; Trial Tr. 20–21, May 30, 2014, ECF No. 40-1 (hereinafter "5/30/14 Tr."). On Sundays, Guo reconciled Eastern Star's weekly sales and delivery records in his home. 4/7/14 Tr. 33–34, 61. With limited exceptions, Jackie handled all other business responsibilities at Eastern Star.[3] 4/7/14 Tr. 49, 111–12; Trial Tr. 24, 40–41, April 9, 2014, ECF No. 39-1 (hereinafter "4/9/14 Tr.").

Around 2009, Henry merged Amersino into Southeast Produce, Ltd. ("Southeast"), another produce wholesaler that he owned. 3/6/14 Tr. 78. There after, Jackie and Guo became

---

[3] Eastern Star employed a truck driver, Ming Fu Wang, who delivered produce and marked invoices. 4/7/14 48–49, 111–12. Additionally, Jackie's wife wrote checks and performed other administrative tasks. 3/5/14 Tr. 96–97. And, according to Henry, a person by the name of Wan Ming placed orders on behalf of Eastern Star. 3/11/14 Tr. 56–57. Neither Ming Fu Wang, Jackie's wife, nor Wan Ming were called to testify at trial.

employees of Southeast, and Eastern Star conducted business with Southeast, rather than Amersino. 3/5/14 Tr. 74–75; 4/7/14 Tr. 41–45.

Initially, neither Jackie nor Guo disclosed their role in Eastern Star to Henry.[4] 3/5/15 Tr. 98; 4/7 Tr. 52–53.  But, in 2010, Henry learned of their involvement in Eastern Star from Lucia Xi, Guo's former girlfriend, and he confronted Jackie and Guo.[5] 3/11/14 Tr. 48–51.  From Henry's perspective, Jackie and Guo operated Eastern Star as a scheme to defraud Amersino and Southeast. *Id*. at 53–54.  Henry estimated that Jackie and Guo stole $1,000,000 from him in the three years that Eastern Star transacted with Amersino/ Southeast. *Id*. at 102–03.  Henry arrived at that figure by reviewing a sampling of invoices, approximating his losses on a weekly basis, and multiplying by three years. *Id*.  Henry did not show Wang or Guo specific documents or calculations to substantiate his alleged damages at the hands of Eastern Star. *Id*. at 165; 5/30/14 Tr. 44.

Jackie and Guo feared that Henry would sue or press criminal charges against them if they did not pay Henry the money he demanded. *Id*. at 117; 3/6/14 Tr. 20; 4/9/14 Tr. 65–69, 74. After a series of meetings, Jackie and Guo agreed to pay Henry $600,000 in real property and monthly installment payments to settle Henry's claims against them. 3/11/14 Tr. 103; Pl. Ex. 1. In addition to the settlement agreement, Jackie and Guo executed a confession of judgment in favor of Henry in the amount of $1,000,000.  When Guo defaulted on the settlement agreement, Henry entered the confession of judgment in Queens County Supreme Court. 3/11/14 Tr. 116, 160–61; Pl. Ex. 4.

---

[4] Henry testified that he was under the impression that Wang Ming owned Eastern Star. 3/11/14 Tr. 44.
[5] Lucia Xi was not called to testify at trial.

III.    **LAW**

Section 523(a)(2)(A) states in pertinent part that "[a] discharge . . . does not discharge an individual debtor from any debt . . . to the extent obtained by . . . false pretenses, false representation or actual fraud . . . ." 11 U.S.C. § 523(a)(2).  When, as here, the debt arises from a settlement agreement, courts are to look beyond the contractual nature of the agreement to determine whether the underlying debt was incurred by false pretenses, false representation, or actual fraud. *Archer v. Warner*, 584 U.S. 314, 322–23 (2003).

Courts construe exceptions to discharge narrowly and in favor of the debtor. *Cazenovia Coll. v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86 (2d Cir. 2000); *Citibank (South Dakota), N.A. v. Olwan (In re Olwan)*, 312 B.R. 476, 482 (Bankr. E.D.N.Y. 2004).  The creditor objecting to dischargeability bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

A plaintiff can prevail under § 523(a)(2)(A) by satisfying the elements of any one of three non-dischargeability grounds listed in the statute. *Indo–Med Commodities, Inc. v. Wisell (In re Wisell)*, 494 B.R. 23, 35 (Bankr. E.D.N.Y. 2011).   First, to establish false pretenses, the plaintiff must show "(1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly by the defendants; (3) creating a contrived and misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money, property, or credit to the defendant." *Voyatzoglou v. Hambley (In re Hambley)*, 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005).  Second, false representation requires a showing that "1. defendant made a false or misleading statement; 2. with intent to deceive; 3. in order for the plaintiff to turn over money or property to the defendant. *Frishberg v. Janac (In re Janac)*, 407 B.R. 540, 552 (Bankr. S.D.N.Y. 2009).  Third, actual fraud under § 523(a)(2)(A)

6

refers to common law fraud, and requires proof "(1) that the defendant made a false representation, (2) the defendant knew it was false at the time is was made, (3) that the defendant made the representation with the intention of deceiving the plaintiff, (4) that the plaintiff justifiably relied on the representation, and (5) the plaintiff sustained damages that were proximately caused by the false material representation." *Am. Honda Fin. Corp. v. Ippolito (In re Ippolito),* No. 12–8403–AST, 2013 WL 828316, at *5 (Bankr. E.D.N.Y. Mar. 6, 2013). "Although [false pretenses, false representation, and actual fraud] are separate bases for relief, each has two common elements—an implied or express misrepresentation, and causality, or reliance." *Stuart v. Abraham (In re Abraham)*, No. 813-74398-REG, 2015 WL 4638567, at *6–7 (Bankr. E.D.N.Y. Aug. 4, 2015).

## IV.    ANALYSIS

The Court finds that the facts adduced at trial are insufficient to prove the elements of false pretenses, false representation, or actual fraud by a preponderance of the evidence.

According to Henry, the Eastern Star fraud began when Guo and Jackie failed to disclose their ownership of the new entity. Henry reasons that Jackie and Guo must have kept their involvement of Eastern Star a secret because they intended to use Eastern Star to furtively take advantage of him. For example, as Amersino/ Southeast employees, Jackie and Guo had access to customer lists, 3/11/14 Tr. 34, which in Henry's view, they wrongfully appropriated for Eastern Star.

However, in Jackie's view, Eastern Star conferred a benefit on Henry by increasing Amersino/ Southeast's sales, 3/5/14 Tr. 89, even if he ultimately regretted having withheld information from his uncle, 3/11/14 Tr. 110. Jackie testified that certain purchasers were no longer willing to transact directly with Henry's entities. Jackie formed Eastern Star to capitalize

on that market by purchasing from Amersino/ Southeast and reselling at a profit.  Furthermore,

Eastern Star often bought discounted, lower quality vegetables from Amersino/ Southeast, which

other customers were not willing to purchase. 3/11/14 Tr. 26–29.  The Court accepts Jackie's

credible and plausible explanation of Eastern Star's origin and purpose.

Guo likewise believed that their actions actually augmented Henry's profits. 5/30/14 Tr.

45.  From Guo's perspective, he only worked for Eastern Star on Sundays, which did not detract

from his responsibilities at Amersino/ Southeast. 4/7/14 Tr. 33–34.  Also, Eastern Star operated

openly as would any other customer of Amersino/ Southeast. *Id.* at 54–56.  In Guo's reasonable

assessment, there was no pressing reason for him to either actively conceal or affirmatively

disclose his relationship with Eastern Star to Henry.  Guo may have encouraged Jackie to

disclose Eastern Star to Henry.  But in the end, Guo deferred to Jackie, which is understandable,

as Jackie is Henry's nephew, and he exercised managerial authority over Guo and the other

employees at Amersino/ Southeast at his uncle's behest. 3/6/14 Tr/ 83–84; 3/11/14 Tr. 38–39;

4/7/14 Tr. 54–55.  According to Jackie, Amersino/ Southeast employees, including Guo,

respected him because he was Henry's nephew, and viewed Jackie as a boss. 3/5/14 Tr. 88;

3/11/14 Tr. 40.  At Amersino/ Southeast, while Henry frequently discussed business matters with

Jackie, he rarely, if ever, spoke directly to Guo. 5/30/14 Tr. 43.  Thus, even if Guo impliedly

misrepresented his involvement with Eastern Star to Henry through silence, he did not willingly

promote the omission, and his involvement in Eastern Star was not motivated by a fraudulent

purpose. 4/9/14 Tr. 69–70.

Business invoices between Amersino/ Southeast as buyer and Eastern Star as purchaser,

proffered as evidence of the alleged fraud, formed a central component of the Plaintiff's case.

The Plaintiff attempted to use the invoices to demonstrate that Eastern Star was not a legitimate

customer—it was the vehicle through which Jackie and Guo stole from him.  The Court has

considered the witnesses' testimony about the invoices.  To the extent that certain invoices were

admitted into evidence, the Court considered the documents themselves.  Ultimately, the Court is

unconvinced by Henry's account.

Henry testified that Jackie and Guo used their position at Amersino/ Eastern Star to alter

invoices.  For each type of vegetable sold, the Amersino/ Southeast invoices listed a quantity of

boxes and a unit price.  On some invoices, the unit price for a certain vegetable would be crossed

off, and a lower number written in. 3/11/14 Tr. 54, 85–86.  According to Henry, Jackie and Guo

profited at his expense by granting themselves a deep discount and reselling the produce at

market rate. 3/11/14 Tr. 54, 85–86, 88.  In other instances, the quantity would be reduced or the

entire line item crossed off. 3/11/14 Tr. 54, 83–86, 92–93.  Henry testified that these markings

show that Jackie and Guo would delete items from Eastern Star's customer invoice, but still take

the full order as listed, and then resell boxes that they had not paid for. 3/11/14 Tr. 96.

Alternatively, Henry alleged that Jackie and Guo would obtain a refund by falsely reporting that

Eastern Star had returned vegetables to Amersino/ Southeast, when it actually sold them for a

profit. 3/11/14 Tr. 53, 92–95.

Notwithstanding Henry's suppositions, all three witnesses testified to instances in which

printed invoices would be routinely marked up to reflect changes in the course of Amersino/

Southeast's regular dealings with its customers. 3/11/14 Tr. 36–38; 4/7/14 Tr. 56–67.  For

example, Amersino/ Southeast might mistakenly offer to sell to a customer more boxes of a

certain item than were actually available. 3/6/14 Tr. 84–86.  A customer might increase or reduce

the quantity of its order, 3/11/14 Tr. 37, or if it was dissatisfied with the quality of vegetables

delivered, request a price reduction or return the items to the warehouse for a refund, 3/11/14 Tr. 24; 4/7/14 Tr. 56–57.

Moreover, pricing at Amersino/ Southeast was not an exact science. Henry set the price list each morning, but gave his nephew Jackie authority to set and change prices as well. 3/11/14 Tr. 47–48. Also, Amersino/ Southeast salesmen, including Guo, had leeway to sell within an acceptable range of prices. 3/11/14 Tr. 47–48, 182–84. Customers were sometimes given a discount, particularly if Amersino/ Southeast needed to unload poor quality produce from its inventory. 3/11/14 Tr. 26. In these types of situations, when an order was amended, Amersino/ Southeast's practice was to make handwritten changes to the printed invoices, which bookkeepers would compile at the end of each day. 3/11/14 Tr. 36–38.

In numerous instances, the witnesses were unable to positively identify the handwriting on invoices as belonging to Jackie or Guo and, thus, could not affirmatively state who had made the changes. *E.g.* 3/9/14 Tr. 128; 4/7/14 Tr. 81. Some of the markings may have been made by Amersino/ Southeast bookkeepers or other employees. 3/5/14 Tr. 204–05. Moreover, Henry testified that he never witnessed Jackie or Guo falsifying invoices. Trial Tr. 84–86, March 13, 2014, ECF No. 35-3 (hereinafter "3/13/13 Tr."). In this respect, the testimony of a bookkeeper at Amersino/ Southeast who was responsible for tracking and processing the invoices might have proved useful, but the parties did not call such a witness. The Court finds it impossible to tell by looking at the invoices whether the cross-outs were ordinary and legitimate or unauthorized and fraudulent.

The Amersino/ Southeast invoices included in the trial exhibits were ones in which Eastern Star was the customer. However, viewing the Eastern Star customer invoices in the context of the witness' description of Amersino/ Southeast's general business practices, it would

appear that Eastern Star transacted with Amersino/ Southeast in the same manner as any other customer.

In an attempt to bolster his case that Guo was actually stealing vegetables, the Plaintiff introduced sales invoices generated by Eastern Star corresponding to its customer invoices from Amersino/ Southeast.  In this scenario, the Eastern Star customer invoice would have quantities crossed out, which Plaintiff argues is evidence that Eastern Star did not pay Amersino/ Southeast for all boxes it took.  But an invoice generated by Eastern Star on the same day indicated that its inventory included the quantities purportedly stricken from the Amersino/ Southeast order. According to Henry, Jackie and Guo must have stolen the vegetables from him and resold them. However, the credible testimony offers two reasonable explanations for the seeming discrepancy. The inventory on the Eastern Star invoice could have been purchased from a supplier other than Amersino/ Southeast, and then resold to Eastern Star's customers. 5/30/14 Tr. 80–81.  Moreover, on a given day, more than one invoice between Amersino/ Southeast and Eastern Star might be generated, which could account for the missing vegetables. 4/9/14 Tr. 103–23; 5/30/14 Tr. 12–33.

In just one example, the Plaintiff produced Southeast Invoice No. 96559, dated June 3, 2009.  On that day, Eastern Star purchased tomatoes at a unit price of $16.00.  The printed text on that invoice lists eighty boxes as the quantity of tomatoes in Eastern Star's order.  However, the "80" was crossed out and replaced with "56." Pl. Ex. 8-6; 4/9/14 Tr. 14–19.

東南農產公司
SOUTHEAST PRODUCE, LTD. (USA)
58-45 47TH ST, MASPETH, NY 11378
Tel: 718-417-8080 FAX: 718-417-7170

**Invoice**
Page 1

| | | | | | | | 96559 |
| EASTERN STAR TRADING | | | Same | | | | - |
| | | | | ES | | | 06/03/09 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 5 BX | 蘆筍 (小箱) Asparagus | | | | | | 14.00 | 70.00 |
| 10 BX | 椰菜花 9 SIZE Cauliflower 9s | | | | | | 17.00 | 170.00 |
| ~~15 BX~~ | ~~雲耳 SIZE~~ | | | | | | ~~12.00~~ | ~~180.00~~ |
| 15 BX | 生菜 CA Lettuce CA | | | | | | 19.00 | 285.00 |
| 45 BX | 蒜頭 5粒裝 5PC Garlic | | | | | | 8.00 | 360.00 |
| ~~80 BX~~ ⑤⑥ | 蕃茄 Tomato | | | | | | 16.00 | ~~1,280.00~~ |

Invoice Total $:    ~~2,345.00~~

24 BX 蕃茄 × $16 = 384

$384—

The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7U.S.C.499e(c). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables, or proceeds from the sale of these commodities until full payment is received.
aims will be considered unless reported immediately upon receipt of merchandise. 請驗收貨物方可簽字.

謝謝! Thank You!
司機
Diver: _____

簽收人
Received By: _____

821

PLAINTIFF EX 8-6

The Plaintiff also introduced Eastern Star Invoice No. 02903, which shows that on the same day, June 3, 2009, Eastern Star sold eighty boxes of tomatoes at a unit price of $17.00. According to the Plaintiff's theory of the case, if Eastern Star had eighty boxes to sell on June 3, 2009, but only paid Southeast for fifty-six, then Wang and Guo must have falsified the Southeast Invoice No. 56559 to conceal their theft of fourteen boxes.

EASTERN STAR TRADING

Tel.: (718) 710-3307/3308
Fax: (347) 368-6673

正東貿易

194-18 Northern Blvd. Suite #226, Flushing, NY 11358

Invoice: 02903

SOLD TO: 中国城

Address:

DATE: 6/3/09

| UNIT | DESCRIPTION | PRICE | AMOUNT | UNIT | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|---|---|---|
| 茶蘭花 | Broccoli (Reg/Crown) | | | 生菜 | Lettuce Iceberg | | |
| 洋葱 | Yellow Onion (2lb,10lb,50lb) | | | 長生菜 | Romaine (Loose, Heart) | | |
| 白洋葱 | White Onion | | | 紅葉生菜 | Red Leaf Lettuce | | |
| 紫洋葱 | Red Onion (2lb,10lb,50lb) | | | 綠葉生菜 | Green Leaf Lettuce | | |
| 西芹 | Celery | | | 蘆筍 | Asparagus (S,XL,Jumbo) | | |
| 青椒 | Green Pepper | | | 金針菇 | Enoki Mushroom | | |
| 紅椒 | Red Pepper | | | 白蘑菇 | Fresh Mushroom | | |
| 牛角椒 | Long Hot Pepper | | 80 | 番茄 | Tomato (5x6) | 17 | 1360 |
| 墨西哥椒 | Jalapino Pepper | | | 長番茄 | Plum Tomato | | |
| 紅蘿卜 | Carrot Jumbo | | | 枝番茄 | Stem Tomato | | |
| 小紅蘿卜 | Baby Carrot | | | 小番茄 | Grape Tomato | | |
| 雪豆 | Snow Pea | | | 小番茄 | Cherry Tomato | | |
| 甜豆 | Sugar Snap Pea | | | 黃瓜 | Cucumber (Large, Select) | | |
| 四季豆 | String Bean | | | 小黃瓜 | Kirby (#1, Choice) | | |
| 青葱 | Green Onion | | | 水瓜 | Green Squash | | |
| 西芹菜 | Curry Parsley | | | 紅菜頭 | Red Radish Bunched | | |
| 意大利芹菜 | Italian Parsley | | | 白蘿卜 | Daikon | | |
| 唐芫茜 | Cilantro | | | 愛得華土豆 | Idsho Potato (#1,#2.5lb) | | |
| 九層塔 | Basil | | | 白土豆 | Chef Potato (Russet) | | |
| 小茴香 | Dill | | | 紅土豆 | Red Potato | | |
| 薄荷葉 | Mint | | | 番薯 | Sweet Potato | | |
| 豆芽 | Bean Sprout | | | 奶油果 | Avacado CA (36,40,45) | | |
| 大葱 | Leek Bunched | | | 奶油果 | Avacado MX (36,40,48) | | |
| 生薑 | Ginger | | | 黃檸檬 | Lemon (95,115,140) | | |
| 蒜頭 | Garlic | | | 青檸檬 | Lime (150,175,200) | | |
| 去皮蒜瓣 | Peeled Garlic (1lb, 5lb) | | | 橙 | Orange (56,64,72,80, 88) | | |
| 奶菜 | Napa Cabbage | | | 白蜜瓜 | Honeydew Melon (4,5,6) | | |
| 菠菜 | Spinach | | | 紅蜜瓜 | Cantaloupe (6,7) | | |
| 椰菜 | Cabbage (Bag, Carton) | | | 鳳梨 | Pineapple (6,7) | | |
| 高麗菜 | Flat Cabbage | | | 玉米 | Yellow Corn | | |
| 紅椰菜 | Red Cabbage | | | 青巴蕉 | Green Plantain | | |
| 茄子 | Eggplant (American, Chinese) | | | 廣東白菜 | Bok Choy | | |
| 白菜花 | Cauliflower (9, 12) | | | 雞蛋 | Egg (L) (XL) | | |

Driver 司機: _____    Customer's Signature 客户签名: _____

Any claims must be made within 24 hours upon receipt of merchandise.

總數 Total: 1360

782

PLAINTIFF EX 8-6a

However, on cross-examination, the Defendant introduced Southeast Invoice No. 96562, which is also dated June 3, 2009. Def. Ex. 14-4. This invoice shows that Eastern Star purchased eighty boxes of tomatoes from Southeast in a separate transaction that occurred on the same date. 4/9/14 Tr. 87–88, 102–103, 117–118.



Collectively, Southeast Invoice Nos. 96559 and 96562 and Eastern Star Invoice No. 02903 indicate that Eastern Star purchased 136 boxes of tomatoes from Southeast on June 3, 2009, and then sold eighty boxes of tomatoes to another buyer. The evidence simply does not substantiate the conclusion that Guo falsified the invoices to conceal and perpetuate a fraud.

Finally, Henry testified that the losses he allegedly sustained were based on loose approximation, rather than a comprehensive tally of stolen goods and unauthorized discounts. 3/11/14 Tr. 102–03, 165.  Nevertheless, Henry blames Eastern Star for the downfall of his businesses, 3/13/14 Tr. 9, and alleges that Jackie and Guo confessed wrongdoing, 3/11/14 Tr. 97, 110.  The Plaintiff argues that Guo would never have agreed to pay such a large settlement sum if he was not legitimately liable.  However, Henry threatened Guo with civil or criminal legal action if Guo did not acquiesce to his demands, and Jackie also pressured Guo to make some form of restitution to his uncle. 4/9/14 Tr. 65–70.  Therefore, the Court does not find Guo's entry into the settlement to be convincing evidence of fraudulent intent.

## V.    CONCLUSION

For all of the foregoing reasons, the Plaintiff has failed to meet his burden of proving that the debt falls within the § 523(a)(2)(A) exception to discharge.  A separate order and judgment shall issue.



**Dated: March 28, 2016**
      **Brooklyn, New York**
                                                     **Nancy Hershey Lord**
                                      **United States Bankruptcy Judge**